JAMELLE N. CUTHBERTSON,

    Plaintiff,

v.

WELLS FARGO BANK, N.A.,

    Defendant.

COMPLAINT

(Jury Trial Demanded)

NOW COMES Plaintiff Jamelle N. Cuthbertson, by and through undersigned counsel, complaining of Defendant Wells Fargo Bank, N.A., and alleging and saying as follows:

## NATURE OF THE ACTION

1. This is an employment discrimination and retaliation case arising from Wells Fargo's systematic targeting of a high-performing African American employee who complained about unlawful discrimination — and whose complaints were substantiated by Wells Fargo's own external investigator.

2. Mr. Cuthbertson spent over seven years building an exemplary record of performance in service of Wells Fargo's most critical regulatory compliance obligations. Wells Fargo repaid that dedication by targeting him for race-based discrimination, dismantling his federally protected disability accommodation, retaliating against him for exercising protected rights, and ultimately terminating his employment just twenty-one days into FMLA-protected paternity leave. After a Wells Fargo-directed internal investigation substantiated Mr. Cuthbertson's discrimination complaint, Wells Fargo terminated the offending supervisor, but

retained his co-conspirator in a position of direct authority over Mr. Cuthbertson, setting the stage for further retaliation that culminated in his termination. Adding insult to injury, Wells Fargo then falsely reported to the North Carolina Division of Employment Security that Mr. Cuthbertson had voluntarily quit, temporarily depriving him of unemployment benefits.

3.      Wells Fargo's conduct gives rise to claims under: (a) the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA/ADAAA"), 42 U.S.C. §§ 12101–12213; (b) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; (c) the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.;   (d) the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. §§ 143-422.1 to 143-422.3; and (e) Negligent Retention and Supervision.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the laws of the United States.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District, including at Wells Fargo's offices located at 401 S. Tryon Street, Charlotte, North Carolina 28202.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      On August 25, 2025, Mr. Cuthbertson, through prior counsel, formally notified Wells Fargo of his claims and instructed it to preserve all relevant evidence. On September 16, 2025, prior counsel provided Wells Fargo's Assistant General Counsel, Tamila Lee, an advance

courtesy copy of the EEOC Charge of Discrimination with written notice of Mr. Cuthbertson's intent to file "absent a request from you to hold off."

8.      Following receipt of the advance courtesy copy, Wells Fargo requested that prior counsel delay filing the Charge of Discrimination to allow the parties time to explore an informal resolution. Prior counsel agreed in writing to accommodate that request.

9.      Despite prior counsel's good-faith efforts to advance the informal resolution process, Wells Fargo failed to engage meaningfully. After Wells Fargo did not respond to prior counsel's final written deadline, Mr. Cuthbertson proceeding to file his Charge of Discrimination on December 15, 2025. The delay between September 2025 and the filing date was attributable solely to Wells Fargo's request and its subsequent failure to engage.

10.     On December 15, 2025, Mr. Cuthbertson timely filed Charge of Discrimination No. 430-2026-01429 with the United States Equal Employment Opportunity Commission ("EEOC"), Charlotte District Office, asserting claims of race- and disability-based discrimination, and retaliation, and FMLA interference against Wells Fargo Bank, N.A.

11.     On February 27, 2026, the EEOC issued a Determination and Notice of Rights, stating that it would not proceed further with its investigation and granting Mr. Cuthbertson the right to sue. The Notice expressly states that its issuance does not mean the claims have no merit and does not certify that the respondent is in compliance with the statutes.

12.     This action is timely filed within ninety days of Mr. Cuthbertson's receipt of the EEOC's Notice of Rights. A copy of the Notice of Rights is attached hereto as Exhibit A, and a copy of the Charge of Discrimination is attached hereto as Exhibit B.

## PARTIES

13.     That Plaintiff Jamelle N. Cuthbertson, hereinafter referred to solely as "Plaintiff"

3

or "Mr. Cuthbertson," is an adult citizen and resident of Charlotte, Mecklenburg County, North Carolina, residing at 1001 N. Brevard Street, Apartment 503, Charlotte, North Carolina 28206. Mr. Cuthbertson is an African American male, born September 19, 1987. At all relevant times, Mr. Cuthbertson was employed by Wells Fargo as a Vice President and Lead Business Accountability Specialist.

14. Upon information and belief, that Defendant Wells Fargo Bank, N.A., hereinafter referred to solely as "Defendant" or "Wells Fargo," is a national banking association with its principal place of business at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo maintains offices in Charlotte, North Carolina, located at 401 S. Tryon Street, Charlotte, North Carolina 28202, and employs in excess of 500 employees. At all relevant times, Wells Fargo was Mr. Cuthbertson's employer within the meaning of the ADA, Title VII, the FMLA, and the NCEEPA.

## GENERAL ALLEGATIONS

### A. Mr. Cuthbertson's Employment History and Exemplary Performance Record

15. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

16. Mr. Cuthbertson joined Wells Fargo in February 2018 as a contractor, serving in the role of Business Initiatives Consultant 3 ("BIC3") within the Rebuilding Trust Office ("RTO"), later known as the Consent Order Program Office ("COPO"). The COPO was established to fulfill the mandates of a September 8, 2016 Consent Order issued by the Consumer Financial Protection Bureau ("CFPB") and to coordinate with external monitors, including Grant Thornton LLP. In recognition of his exceptional performance, Wells Fargo converted Mr. Cuthbertson to full-time employee status in August 2019.

4

17. Mr. Cuthbertson's responsibilities included management of high-priority regulatory workstreams related to the CFPB Consent Order, including enterprise-wide training, design, and deployment; complaint management and remediation; performance management metrics; and team member incentives. He also served as the primary liaison for Wells Fargo's regulatory remediation team in fielding and fulfilling requests from Grant Thornton and other third parties, including leading the RTO's weekly calls with Grant Thornton. Mr. Cuthbertson's contributions helped lead to the lifting of the CFPB Consent Order, an important regulatory milestone for Wells Fargo.

18. Mr. Cuthbertson reported directly to Robert Propst ("Propst"), a 38-year veteran of the bank who served as Senior Vice President and actively mentored Mr. Cuthbertson throughout this period. Between 2018 and 2022, Mr. Cuthbertson consistently received performance ratings of "Meets Expectations" or "Exceeds Expectations" under Propst's leadership, maintained flawless disciplinary and attendance records, and became the longest-tenured BIC3 on Propst's team.

**B. Mr. Cuthbertson's Disability and Approved Accommodation**

19. In or about late August 2022, Mr. Cuthbertson experienced cardiac complications and immediately sought medical attention. In November 2022, at age 35, Mr. Cuthbertson underwent quadruple bypass open-heart surgery. Mr. Cuthbertson's cardiac condition constitutes a disability affecting major life activities within the meaning of the ADA, 42 U.S.C. § 12102(1) and (2)(A), and 29 C.F.R. § 1630.2(g)(1) and (i).

20. Upon returning from medical leave in January 2023, Mr. Cuthbertson's treating physician recommended a full-time work-from-home accommodation and provided supporting documentation. Propst implemented the accommodation and approved it through Wells Fargo's

Accommodations Team. Mr. Cuthbertson successfully performed his full range of job duties under this arrangement.

**C. Discriminatory Treatment Under New Leadership**

21. Before Mr. Cuthbertson returned from medical leave in 2023, Wells Fargo underwent a reorganization in which Propst began reporting to Sandra Vazquez ("Vazquez"), who assumed responsibility for COPO following a series of leadership exits. Vazquez expressed skepticism about the value of Propst's team and expressed, despite regular trips to Charlotte, North Carolina, an unwillingness to meet in person with Propst's team — a team largely composed of African American employees.

22. For Mr. Cuthbertson's 2022 performance review, Propst recommended a rating of "Exceeds Expectations." Vazquez, despite having no previous working relationship with Mr. Cuthbertson and being unable to articulate any specific basis for her position, overrode Propst and downgraded the rating to "Meets Expectations."

23. For Mr. Cuthbertson's 2023 mid-year review, Vazquez again pressed Propst without merit to reduce Mr. Cuthbertson's rating to "Inconsistently Meets Expectations." Propst refused and maintained the "Meets Expectations" rating. This refusal contributed directly to Propst's forced retirement in August 2023.

24. Upon Propst's forced retirement in August 2023, Jim Merrick ("Merrick") was appointed as Senior Manager over Mr. Cuthbertson's team that was largely composed of African American employees. Prior to assuming the role, Merrick had made racially charged remarks to Propst, including: "Is it true that your whole team is Black?" and "Do you have any White people on your team?"

25. Neither Merrick nor his successor, Monique Baxter ("Baxter"), was selected

through any competitive or open hiring process. Both were installed directly by Vazquez — Merrick without the position being posted or interviews conducted, and Baxter informed of her appointment less than twenty-four hours before it was announced to the team. By personally selecting both managers placed in direct authority over Mr. Cuthbertson, Vazquez ensured their loyalty and their willingness to carry out her directives; consequences Propst's forced retirement had made unmistakably clear.

26.     Shortly after assuming the role, Merrick began stripping Mr. Cuthbertson of critical assignments, diverting high-priority tasks to other team members or to himself while using the SharePoint tracking system to misrepresent contributions. Mr. Cuthbertson and a similarly situated Black colleague were removed from priority projects and reassigned to the Evidence-Based Control Execution ("EBCE") team, a functional demotion in responsibility, visibility, and strategic importance, while White employees such as Christina Hemlock, who admitted doing little to justify performance improvements, received more favorable evaluations.

27.     In January 2024, for the first time in his career at Wells Fargo, Mr. Cuthbertson received a rating of "Inconsistently Meets Expectations" on his end-of-year review, issued by Merrick and Vazquez — just months after receiving a "Meets Expectations" rating from Propst at mid-year. The downgrade was issued without supporting documentation or manager feedback and substantially impacted Mr. Cuthbertson's compensation, career trajectory, and standing at the bank.

**D. Mr. Cuthbertson's Formal Complaints and the Substantiated Investigation**

28.     In February 2024, Mr. Cuthbertson filed a formal complaint of discrimination and retaliation based on race and disability with Wells Fargo's Employee Relations and Conduct Management Allegations team through the EthicsLine. The matter was referred to external

investigator Valerie Daye, whose investigation substantiated Mr. Cuthbertson's complaint of discrimination against Merrick, leading to Merrick's termination in or around August 2024.

29. Wells Fargo's investigation found that Vazquez had misrepresented particular facts concerning her role in the improper and discriminatory performance ratings given to Mr. Cuthbertson. Despite these findings, Wells Fargo failed to take corrective action against Vazquez and retained her in a position of authority as Mr. Cuthbertson's "two-up" manager — a conflict that was never addressed and ultimately resulted in further harm.

30. Following the substantiation of Mr. Cuthbertson's complaint, Wells Fargo reversed the unjustified "Inconsistently Meets Expectations" rating; however, the amended performance evaluation included only vague and non-substantive language, failing to meaningfully acknowledge or rectify the prior mischaracterization. Wells Fargo's scheme to suppress the performance ratings of employees in protected classes served a dual purpose: to deprive targeted employees of bonus compensation in the near term, and to pave the way for their termination with cause, and without severance, in the event they received consecutive "Inconsistently Meets Expectations" ratings. Mr. Cuthbertson's withheld bonus compensation was not restored until September 6, 2024.

**E. Wells Fargo's Failure to Accommodate and Failure to Engage in the Interactive Process**

31. Beginning in March 2024, Merrick escalated harassment targeting Mr. Cuthbertson's previously approved work-from-home accommodation, openly questioning its validity despite no documented performance issues and Mr. Cuthbertson's proven ability to perform his job remotely.

32. Mr. Cuthbertson's accommodation lapsed in 2024, resulting in an approximately seven-week period during which the lapse went unaddressed by Wells Fargo. On or around March

22, 2024, Wells Fargo's Accommodations Manager acknowledged that the Accommodations Team does not provide reminders or updates when accommodations are expiring or have expired, meaning Mr. Cuthbertson was not informed that he needed to recertify.

33.     From on or around March 22, 2024 through May 28, 2024, Mr. Cuthbertson participated in multiple meetings with Wells Fargo personnel regarding his accommodation. Despite assurances that Wells Fargo would arrange alternative accommodations and that his supervisor would conduct weekly check-ins until resolution was reached, all contact from Wells Fargo abruptly ceased on or around May 29, 2024, with no permanent workspace arranged and no permanent accommodation implemented.

34.     On May 3, 2024, the Wells Fargo Accommodations Team issued a "Transitional Return to Office" arrangement (Accommodation Case ID: HRC9722222), providing only a phased schedule requiring Mr. Cuthbertson to be in the office three days per week. This arrangement was not a reasonable accommodation; it mirrored the organization's standard hybrid schedule and offered Mr. Cuthbertson nothing beyond what was already expected of all employees.  It was materially less protective than the fully remote arrangement his treating physician had recommended and that Wells Fargo had previously approved. Wells Fargo made no effort to explore alternatives, such as team reassignment or role restructuring, that might have better supported Mr. Cuthbertson's medical restrictions, despite having both the authority and the organizational capacity to do so.

**F. Termination During FMLA-Protected Leave**

35.     On April 8, 2025, Mr. Cuthbertson commenced a sixteen-week period of FMLA-protected paternity leave, which had been approved by Wells Fargo and to which Mr. Cuthbertson was fully entitled.

36. On April 29, 2025, just twenty-one days into his protected leave, Mr. Cuthbertson was notified of his termination by Monique Baxter ("Baxter"), acting directly under the direction of Vazquez. Baxter advised that the termination was not related to performance or to any cost-cutting measure, but to "future organizational structure," providing no supporting documentation or rationale.

37. The April 29, 2025 communication was prospective notice of future position elimination, not an immediate separation. As of that date, Mr. Cuthbertson remained listed as an active employee in Wells Fargo's Workday system, continued receiving compensation and benefits, and was not provided with severance paperwork, a final paycheck, or a COBRA notice. His employment formally ended on July 29, 2025 when the full legal and economic consequences of Wells Fargo's decision were first imposed upon him.

38. Wells Fargo structured the displacement to run concurrently with Mr. Cuthbertson's paternity leave. Whereas similarly situated coworkers who were also laid off received approximately 60 days of displacement pay, Mr. Cuthbertson did not receive displacement pay because he was on paternity leave. In addition, Mr. Cuthbertson noted that all of the Black employees who participated in the internal discrimination investigation were laid off, while others outside the protected class were not, supporting the inference that the layoffs were retaliatory in nature and targeted employees who had exercised protected rights.

39. The contrast with Amanda Korf, a White employee on Vazquez's team, is instructive. When Korf faced a comparable employment risk, Wells Fargo arranged her reassignment to a different team, without requiring her to apply, interview, or possess relevant experience, specifically to preserve her employment. No such alternative was explored for Mr. Cuthbertson, an African American employee who had filed a substantiated discrimination

10

complaint and was on federally protected leave when Wells Fargo terminated him.

**G. Wells Fargo's Post-Termination Retaliation: Interference with Unemployment Benefits**

40.     Following the conclusion of his employment, Mr. Cuthbertson filed for unemployment benefits with the North Carolina Division of Employment Security. On or about October 7–9, 2025, the Division contacted Mr. Cuthbertson in connection with his claim — Wells Fargo had falsely reported to the agency that Mr. Cuthbertson had voluntarily quit his employment. After Mr. Cuthbertson submitted documentary proof of his involuntary layoff, the determination was reversed in his favor. Wells Fargo's deliberate misrepresentation to a state agency, made after Mr. Cuthbertson had filed a formal internal complaint of discrimination and communicated his intent to pursue legal remedies, constitutes a separate and independently actionable act of retaliation.

<u>**FIRST CLAIM FOR RELIEF:**</u>
**VIOLATION OF THE ADA/ADAAA — FAILURE TO ACCOMMODATE**
**(42 U.S.C. §§ 12101 et seq.)**

41.     Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

42.     At all relevant times, Mr. Cuthbertson was a qualified individual with a disability within the meaning of the ADA. His quadruple bypass cardiac surgery and ongoing heart condition substantially limited major life activities, including but not limited to exertion, travel, and physical stress, as defined by 42 U.S.C. § 12102(2)(A) and 29 C.F.R. § 1630.2(i).

43.     Mr. Cuthbertson requested and received a reasonable accommodation — full-time remote work — which was successfully implemented with no adverse impact on his performance.

44.     Beginning in March 2024, Wells Fargo, through Merrick and others acting under Vazquez's direction, sought to revoke Mr. Cuthbertson's accommodation without justification,

11

failed to engage in the legally required interactive process, promised alternative in-office accommodations that were never implemented, and ultimately reduced his fully remote arrangement to a transitional return-to-office schedule requiring three days per week in the office.

45. Wells Fargo's failure to provide the previously approved reasonable accommodation and its failure to engage in a good-faith interactive process constituted violations of the ADA.

46. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

## SECOND CLAIM FOR RELIEF:
## VIOLATION OF THE ADA/ADAAA — DISABILITY DISCRIMINATION AND RETALIATION
### (42 U.S.C. §§ 12101 et seq.)

47. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

48. Mr. Cuthbertson engaged in protected activity under the ADA by requesting a reasonable accommodation and by filing internal complaints of disability discrimination.

49. Following Mr. Cuthbertson's protected activity, Wells Fargo subjected him to escalating harassment regarding his accommodation, revocation of the accommodation, manipulation of his performance evaluations, reassignment to a lower-profile role, and ultimately termination of his employment. Wells Fargo also falsely reported to state unemployment authorities that Mr. Cuthbertson had quit, depriving him of unemployment benefits to which he was entitled.

50. The close temporal relationship between Mr. Cuthbertson's protected activity and these adverse actions, together with the pattern of conduct described herein, establishes a causal

12

connection sufficient to support his claims.

51. Wells Fargo's conduct constitutes disability discrimination and unlawful retaliation under the ADA.

52. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

## THIRD CLAIM FOR RELIEF:
## VIOLATION OF TITLE VII — RACE DISCRIMINATION AND DISPARATE TREATMENT
### (42 U.S.C. § 2000e et seq.)

53. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

54. Mr. Cuthbertson is an African American man and a member of a protected class under Title VII.

55. Despite an unblemished performance record spanning over seven years, Mr. Cuthbertson was subjected to unwarranted performance downgrades, stripping of critical assignments, manipulation of project tracking systems, reassignment to a lower-profile role, denial of accommodation benefits extended to similarly situated White colleagues, and ultimate termination — treatment that was disparate from similarly situated White colleagues such as Amanda Korf and Christina Hemlock.

56. Wells Fargo's own investigation substantiated Mr. Cuthbertson's complaint of racial discrimination against Merrick and led to Merrick's termination, confirming that race was a motivating factor in the adverse treatment Mr. Cuthbertson experienced.

57. Wells Fargo's conduct constitutes unlawful discrimination on the basis of race in violation of Title VII.

13

58. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

**FOURTH CLAIM FOR RELIEF:**
**VIOLATION OF TITLE VII — HOSTILE WORK ENVIRONMENT**
**(42 U.S.C. § 2000e et seq.)**

59. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

60. Merrick made racially charged remarks about the composition of Propst's team, including "Is it true that your whole team is Black?" and "Do you have any White people on your team?" Vazquez expressed unwillingness to meet in person with Propst's largely African American Charlotte team despite regular visits to the city, made repeated baseless challenges to Mr. Cuthbertson's performance, and participated in racially discriminatory conduct that Wells Fargo's own investigation confirmed.

61. This racially hostile conduct was severe and pervasive, altered the terms and conditions of Mr. Cuthbertson's employment, and created an abusive work environment.

62. Wells Fargo knew or should have known of the hostile work environment and failed to take adequate remedial action, including by retaining Vazquez in a position of authority over Mr. Cuthbertson after her misconduct was identified during the investigation.

63. Wells Fargo's conduct constitutes a hostile work environment in violation of Title VII.

64. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

14

65. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

66. In February 2024, Mr. Cuthbertson filed a formal complaint of race and disability discrimination through Wells Fargo's EthicsLine, protected activity under Title VII.

67. Following this complaint, Wells Fargo permitted Merrick to remain in his supervisory role and continue retaliatory conduct against Mr. Cuthbertson, retained Vazquez in authority over Mr. Cuthbertson despite findings of her misconduct, denied and revoked Mr. Cuthbertson's accommodation, issued an amended performance review containing only vague and non-substantive language, terminated Mr. Cuthbertson during FMLA-protected leave, denied him displacement pay provided to non-protected colleagues, and falsely reported to unemployment authorities that he had quit.

68. Further, all of the Black employees who participated in the internal investigation were laid off, while others outside the protected class were not, supporting an inference that the adverse employment actions were part of a coordinated retaliatory scheme targeting those who had exercised protected rights.

69. These actions constitute unlawful retaliation under Title VII.

70. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

**SIXTH CLAIM FOR RELIEF:**
**VIOLATION OF THE FMLA — INTERFERENCE**
**(29 U.S.C. § 2615(a)(1))**

71. Plaintiff incorporates by reference and adopts all foregoing allegations as though

15

fully set forth in detail.

72. At all relevant times, Mr. Cuthbertson was an eligible employee entitled to FMLA leave, and Wells Fargo was a covered employer under the FMLA.

73. Mr. Cuthbertson commenced a sixteen week, FMLA-protected paternity leave on April 8, 2025. On April 29, 2025, just twenty-one days into that protected leave, Wells Fargo notified Mr. Cuthbertson that his position would be eliminated, citing an unsubstantiated "organizational change" and providing no supporting documentation. Mr. Cuthbertson remained listed as an active employee in Wells Fargo's internal systems, continued receiving compensation and benefits, and was not provided with severance paperwork, a final paycheck, or a COBRA notice on that date. His employment formally ended on July 29, 2025 upon the conclusion of his paternity leave and displacement period.

74. Wells Fargo structured the termination to run concurrently with Mr. Cuthbertson's paternity leave and denied him displacement pay provided to similarly situated colleagues — compensation he did not receive precisely because he was on paternity leave — thereby interfering with the benefits and protections to which he was entitled under the FMLA.

75. Wells Fargo's conduct constitutes interference with Mr. Cuthbertson's rights under 29 U.S.C. § 2615(a)(1).

76. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein, including loss of compensation, benefits, and all other relief available under the FMLA, including liquidated damages.

**SEVENTH CLAIM FOR RELIEF:**
**VIOLATION OF THE FMLA — RETALIATION**
**(29 U.S.C. § 2615(a)(2))**

77. Plaintiff incorporates by reference and adopts all foregoing allegations as though

16

fully set forth in detail.

78.     Mr. Cuthbertson's commencement of FMLA-protected paternity leave on April 8, 2025 constituted protected activity under the FMLA.

79.     Wells Fargo's decision to eliminate Mr. Cuthbertson's position just twenty-one days into protected paternity leave, following his disability accommodation requests, formal discrimination complaints, and the substantiated findings against his supervisors, constitutes retaliation for exercising his FMLA rights. The extraordinary brevity of the interval between the commencement of protected leave and the notice of termination, combined with the full pattern of discriminatory and retaliatory conduct described herein and the pretextual justification offered, establishes retaliatory motive.

80.     That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein, including loss of compensation, benefits, liquidated damages, and all other relief available under the FMLA.

### EIGHTH CLAIM FOR RELIEF:
### VIOLATION OF THE NCEEPA
### (N.C. Gen. Stat. §§ 143-422.1 to 143-422.3)

81.     Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

82.     The NCEEPA, N.C. Gen. Stat. §§ 143-422.1 to 143-422.3, prohibits employment discrimination and retaliation on the basis of race and disability and imposes a duty on employers to provide reasonable accommodations to qualified employees with known medical conditions.

83.     The conduct described herein, including race-based disparate treatment, failure to accommodate Mr. Cuthbertson's cardiac disability, retaliation for protected complaints, and termination during protected leave, constitutes violations of the NCEEPA.

17

84. That as a direct and proximate result of the foregoing, Mr. Cuthbertson sustained damages and will continue to sustain damages as set forth herein.

<u>NINTH CLAIM FOR RELIEF:</u><br><u>NEGLIGENT RETENTION AND SUPERVISION</u>

85. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

86. Defendant owed a duty of care to Plaintiff to employ and retain only competent, fit, and suitably trained individuals.

87. Defendant breached this duty by retaining employees, including Vazquez, when it knew or should have known, in the exercise of ordinary care, that Vazquez was incompetent, unfit, held a discriminatory bias towards African Americans, and posed a foreseeable risk of harm to individuals such as Plaintiff.

88. As a direct and proximate result of Defendant's negligence in retaining Vazquez, Plaintiff sustained damages and losses.

<u>DAMAGES</u>

89. Plaintiff incorporates by reference and adopts all foregoing allegations as though fully set forth in detail.

90. That as a proximate result of the aforesaid conduct of Defendant, Plaintiff has sustained damages and will continue to sustain damages in the future, including but not limited to the following:

    a. Lost wages, back pay, and lost benefits;

    b. Denial of displacement pay provided to similarly situated colleagues;

    c. Emotional distress, mental anguish, and suffering;

18

  d. Harm to professional reputation and career;

  e. Front pay and future economic losses;

  f. Punitive damages under the ADA and Title VII;

  g. Liquidated damages under the FMLA; and

  h. Such other damages as may be shown at trial.

91. That as a direct and proximate result of Defendant's unlawful conduct, Plaintiff is entitled to recover damages from Defendant in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Jamelle N. Cuthbertson prays unto the Court that he has and recovers:

1. Judgment in his favor against Wells Fargo on all counts;

2. Compensatory damages for lost wages, lost benefits, denial of displacement pay, and all other economic losses in an amount to be determined at trial;

3. Compensatory damages for emotional distress, mental anguish, and harm to professional reputation in an amount to be determined at trial;

4. Punitive damages under the ADA and Title VII in an amount to be determined at trial;

5. Liquidated damages under the FMLA;

6. Reinstatement of employment or, in the alternative, front pay and future lost earnings;

7. Pre-judgment and post-judgment interest as provided by law;

8. Reasonable attorneys' fees and costs pursuant to the ADA, Title VII, and the FMLA;

9. Trial by jury on all issues so triable; and

19

10. For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 27th day of May, 2026,

*/s/ Michael C. Harman*
Michael C. Harman
HARMAN LAW, PLLC
10224 Hickorywood Hill Ave., Ste 202
Huntersville, NC 28078
T: (704) 885-5550
F: (704) 885-5551
michael@harmanlawnc.com
*Attorney for Plaintiff*

20